```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
OEI HONG LEONG,                                                         :
                                                                        :
                              Plaintiff,                                :      13-CV-8655 (JMF)
                                                                        :
              -v-                                                       :      MEMORANDUM OPINION
                                                                        :              AND ORDER
THE GOLDMAN SACHS GROUP INC.,                                           :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      This case, in which a Singaporean billionaire alleges fraud and related torts in connection with currency option trades that he made in an investment account with Goldman Sachs (Asia) LLC, was removed to this Court from state court in December 2013. (Docket No. 1). At that time, the sole defendant, Goldman Sachs Group, was represented by Hillary Richard and Charles Michael of Brune & Richard LLP. In January 2014, Defendant filed a motion to stay in favor of arbitration (Docket No. 18), which the Court granted by Opinion and Order entered June 26, 2014 (Docket No. 33). To the extent relevant here, the Court held that, under the terms of agreements between Plaintiff and entities affiliated with Defendant, the parties' dispute "must be submitted to arbitration in London." *Leong v. Goldman Sachs Group, Inc.*, No. 13-CV-8655 (JMF), 2014 WL 2893310, at *5 (S.D.N.Y. June 25, 2014). The Court declined to dismiss the case, noting that dismissals are appealable orders and thus may delay the arbitral process. Nevertheless, noting that there was "no reason to keep the case open pending the arbitration," the Court directed the Clerk of Court "to administratively close the case without prejudice" to reopening it upon conclusion of the arbitral proceedings. *Id.* at *6. When the case was

administratively closed, Defendant's counsel was still associated with the law firm of Brune & Richard LLP.  (*See, e.g.*, Docket No. 30).

On February 9, 2016, Defendant, still represented by Mr. Michael, filed a motion for a temporary restraining order and permanent injunction seeking to prevent Plaintiff from pursuing an action before the Commodities Future Trading Commission ("CFTC").  (Docket No. 34).  That same day, after telephone calls involving the Court's law clerk and the parties, the Court held an impromptu telephone conference to set a schedule for briefing Defendant's motion.  At the time of the conference, the Court was aware of the motion, but it had not read any of the materials supporting the motion and was therefore unfamiliar with its substance.  It was also unaware that, at some point between June 2014 (when the case was administratively closed) and February 9, 2016 (when Defendant filed its motion), Mr. Michael had moved from Brune & Richard LLP to Steptoe & Johnson LLP ("Steptoe"); Mr. Michael did not file any notice of his change in firm affiliation or update the docket.[1]  During the conference, the Court set a briefing schedule, which was memorialized in a text-only Order the following day.  (Docket No. 37).  Among other things, the Court's Order directed Defendant to "immediately seek an extension of time to answer in the CFTC proceedings" and to "promptly advise the Court of its answer deadline" — as that information had some bearing on the briefing schedule for Defendant's motion.  (*Id.*).

Thereafter, the Court took no further action in the case, intending to wait until Defendant's motion became fully briefed to review any papers associated with the motion.  On February 23, 2016, however, Mr. Michael filed a letter — on Steptoe letterhead — informing the Court that Defendant had obtained an extension of time to answer in the CFTC proceeding.

---

[1]  Indeed, the docket still lists him as being at "Brune Law P.C."

(Docket No. 38).  Upon reviewing the letter, the Court learned for the first time that Mr. Michael had moved to Steptoe.  The Court immediately contacted the Clerk of Court to communicate its intent, absent a waiver by both parties, to recuse itself because it is represented by another partner at Steptoe in connection with unrelated matters.  The very next day, February 24, 2016, the Clerk filed a letter advising the parties of the Court's intention to recuse absent a waiver by both parties and giving them a week in which to advise if they were willing to waive the conflict.  (Docket No. 39).[2]

On March 1, 2016 — before the deadline for the parties to respond to the Clerk's letter — Defendant filed a "Notice of Substitution of Attorney" seeking leave to substitute Lawrence T. Gresser of Cohen & Gresser LLP for Mr. Michael.  (Docket No. 46).  The Court consulted the *Guide to Judiciary Policy*, a publication of the Administrative Office of the U.S. Courts that references non-binding guidance provided by the Judicial Conference of the United States Committee on Codes of Conduct, and concluded that granting the substitution would cure any possible appearance of impropriety and thereby obviate the need for its recusal.  In particular, the *Guide* references a non-binding opinion of the Committee on Codes of Conduct described as follows: "After a pending bankruptcy case was disposed of, the judge hired (for personal, unrelated matter) another lawyer in the firm that had represented the debtor. Motion for reconsideration was filed, and the debtor changed lawyers."  Administrative Office of the U.S.

---

[2]   That procedure was in accordance with Canon 3(D) of the Code of Conduct for United States Judges, titled "Remittal of Disqualification."  Canon 3(D) provides that "[i]nstead of withdrawing from the proceeding, a judge disqualified" because his or her impartiality might reasonably be questioned "may" (except in circumstances not relevant here) "disclose on the record the basis of disqualification."  It continues: "The judge may participate in the proceeding if, after that disclosure, the parties and their lawyers have an opportunity to confer outside the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate."

Courts, Guide to Judiciary Policy, Vol. 2B, § 3.6-2(a-1) (2014).  The Committee's guidance in that instance — nearly identical to the present situation — was that "[t]*he judge need not recuse because a law firm formerly involved in the case now represents the judge*, unless particular circumstances would indicate an appearance of partiality."  *Id.* (emphasis added).  Accordingly, on March 9, 2016, the Court signed an Order granting the substitution and indicating that, in its view, that "eliminate[d] the need . . . for the Court to recuse itself."  (Docket No. 48).  The Court stated that if any party disagreed, it should notify the Court by March 14, 2016.  (*Id.*).

By letter dated March 14, 2016, a copy of which is attached to this Memorandum Opinion and Order as Exhibit 1, Plaintiff did lodge his objection to the Court retaining the case.[3]  The Court treats Plaintiff's letter as a motion for recusal and denies the motion as meritless.  Under federal law, "[a] judge is required to recuse [him]self from 'any proceeding in which h[is] impartiality might reasonably be questioned.'"  *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (quoting 28 U.S.C. § 455(a)).  Recusal is examined under an "objective" standard — specifically, "the question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality."  *Id.*  The answer to that question given the facts and circumstances of this case is, in the Court's view, plainly no.  Absent a waiver by both parties, it is conceivable (although in

---

[3]   Plaintiff submitted his letter to the Clerk of Court rather than filing it on ECF. Thereafter, the Clerk forwarded it to the Court.  (Although Canon 3(D) provides that communications in connection with the remittal procedure are to take place "outside the presence of the judge," Plaintiff's March 14, 2016 letter was in response to the Court's endorsement indicating that it did not intend to recuse, not the remittal procedure.  Accordingly, the Court determined that there was no reason not to review the letter itself.  It is, of course, standard practice for a judge presiding over a case to decide a motion for recusal.  *See, e.g.*, *Lamborn v. Dittmer*, 726 F. Supp. 510, 514 (S.D.N.Y. 1989); *see also, e.g.*, *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify himself.").)

the Court's judgment, not likely) that an objective observer might have reasonably questioned the Court's impartiality if Mr. Michael had remained counsel to Defendant given that the Court is represented by one of Mr. Michael's partners in unrelated matters. *Cf., e.g.*, Administrative Office of the U.S. Courts, Guide to Judiciary Policy, Vol. 2B, § 3.6-2(a) (2014) (expressing the view that "where an attorney-client relationship exists between the judge and the lawyer whose law firm appears in the case, the judge should recuse absent remittal"); *see also In re Cargill, Inc.*, 66 F.3d 1256, 1260 n.4 (1st Cir. 1995) (quoting an earlier version of the Guide to Judiciary Policy). But with Mr. Michael no longer participating in the case, it would — in the Court's view — be entirely unreasonable to question the Court's impartiality in this matter. Put simply, while the Court had an attenuated connection to counsel when Mr. Michael represented Defendant, it has no connection to counsel whatsoever at this time.[4]

In arguing otherwise, Plaintiff relies almost exclusively on *Cargill*, but that case hurts rather than helps Plaintiff's cause. In *Cargill*, the assigned district judge became involved in an unrelated real estate dispute while the case was pending before him. *See* 66 F.3d at 1258. The judge contacted a partner at a small law firm to represent him in his dispute, unaware that the law

---

[4] Plaintiff states that it is "unclear why" the conflict "was not discovered or disclosed by [Defendant], Mr. Michael, or [the Court] until over two weeks after" Defendant's motion was filed. (Ex. 1 at 2). The reason is that the Court, as noted, was unaware of the fact that Mr. Michael had moved to Steptoe until it reviewed his letter of February 23, 2016 — whereupon it immediately directed the Clerk of Court to advise the parties of the conflict. (The Court has no reason to believe that Defendant or Mr. Michael were aware of the conflict until the Clerk filed her letter the next day.) Plaintiff also states that, while the conflict existed, the Court "participated in telephone conferences, read motions and briefs and entered orders in this case" (*id.* at 3), but that is a vast exaggeration. The Court did hold a telephone conference, but it was limited to setting a briefing schedule, and it did enter an order, but it was limited to memorializing the schedule, and the Court was not aware at the time it did either of those (largely ministerial) things that Mr. Michael had moved to Steptoe. The Court did not review any "motions" or "briefs" (let alone decide any motions) while the conflict existed.

firm was involved in the case then pending before him.  *See id.*  On a petition for mandamus, the First Circuit declined to order removal of the judge, but the Court noted in *dictum* that the judge's relationship with counsel "probably" created an appearance of impropriety "adequate" to trigger disqualification.  *Id.* at 1260.  As the Court explained in a footnote:

> Most observers would agree that a judge should not hear a case argued by an attorney who, at the same time, is representing the judge in a personal matter.  Although the appearance of partiality is attenuated when the lawyer appearing before the judge is a member of the same law firm as the judge's personal counsel, but not the same individual, many of the same cautionary factors are still in play.  This principle would seem to have particular force where, as here, the law firm is small and the judge's lawyer is a name partner.

*Id.* at 1260 n.4 (citations omitted).  It is plain that, contrary to Plaintiff's assertions, this case does not involve a "very similar factual situation."  (Ex. 1 at 2).  Here, unlike in *Cargill*, the lawyer connected to the Court's lawyer is no longer counsel in the case.  (Moreover, Steptoe — unlike the firm at issue in *Cargill* — is a very large firm, and neither the Court's lawyer nor Mr. Michael is a named partner there.)  As a result, there is not even the "attenuated" appearance of partiality identified by the First Circuit in *Cargill*.  66 F.3d at 1260 n.4.  Given the First Circuit's view that the facts in *Cargill* presented a close call, and only "probably" triggered the need to recuse, its decision supports the Court's conclusion that recusal is no longer necessary here.[5]

---

[5]    In his letter, Plaintiff contends that "[t]he only plausible explanation" for Defendant's request to substitute counsel "is that it is a clear attempt to 'judge shop' and try to retroactively eliminate the conflict" to keep the Court on the case.  (Ex. 1 at 3).  Whether or not that contention is fair, Plaintiff cites no authority (and the Court is unaware of any authority) for the proposition that such an intent, in itself, calls for recusal of the assigned judge.  Moreover, Plaintiff himself is not immune from allegations of "gamesmanship."  (*Id.*).  Given that he lost once before and that Defendant's present motion largely seeks to enforce the Court's prior ruling, he may well believe that he would have better odds before a new judge.

In short, Plaintiff's request that the Court recuse itself from this case is denied, and the Court will consider Defendant's pending motion for injunctive relief in due course.

SO ORDERED.

Dated: March 18, 2016
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

# Exhibit 1



**McNulty Law Firm**

827 Moraga Drive
Los Angeles, CA 90049

310.471.2707 • 800.730.8888
Fax 310.472.7014

March 14, 2016



RECEIVED
MAR 15 2016
CLERK'S OFFICE
S.D.N.Y.

Ruby J. Krajick
Clerk of Court
USDC- Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Oei Hong Leong v. The Goldman Sachs Group, Inc.*
            Case No.: 13-CV-8655(JMF)

Dear Clerk:

    This letter will serve as Plaintiff, Oei Hong Leong's ("Mr. Oei") response to the Docket Order from the Honorable Jesse L. Furman, Docket Order [DE 48] dated March 9, 2016, which stated that "In the Court's view, the substitution of counsel eliminates the need --- discussed in the Clerks' letter of February 24, 2016 (Docket No. 39) - for the Court to recuse itself. If any party disagrees, it shall notify the Court no later than March 14, 2016."

    With all due respect, Mr. Oei hereby advises that he **DOES NOT** agree that the substitution of counsel for the Defendant eliminated the basis for the disqualification of Judge Jesse L. Furman, he believes that disqualification is required and he **DOES NOT** agree to waive this disqualification.

    As you are aware, by letter dated February 24, 2016, you advised all parties that "Judge Jesse L. Furman intends to disqualify in this proceeding because he is represented in matters related to his late father's estate by Robert Rizzi, a partner at Steptoe & Johnson LLP - where Charles Michael, counsel for Defendant, appears to now work." See, "Notice Concerning Waiver of Judicial Disqualification," [DE 39 at p. 1]. Pursuant to that letter, any party which agreed to waive this disqualification was required to send a letter expressly waiving that conflict to you within one week of the date of that letter, which would have been by March 2, 2016. As Mr. Oei did not agree to waive this disqualification, he did not send in any letter, as you stated: "[u]nless a waiver is obtained from all parties and all counsel, Judge Jesse M. Furman intends to disqualify in this proceeding [;] and, that "[i]f the disqualification is not waived, the case will be reassigned to another judge." However, based upon telephone calls with your office it appears that there might have been some confusion with regard to the position of our client, Mr. Oei regarding the disqualification of Judge Furman. To ensure there was no doubt as to our client's position, we wrote you a letter on March 11, 2016 to specifically re-confirm that Mr. Oei **DID NOT** agree to waive the disqualification of Judge Furman.

The conflict which requires Judge Furman to disqualify himself is a significant one and it is unclear why this conflict was not discovered or disclosed by GS Group, Mr. Michael or Judge Furman until over two weeks after the Motion for Temporary Restraining Order and Motion for Permanent Injunction were filed on February 9, 2016 [DE's 34-36].  Nonetheless, as soon as the grounds for disqualification were made known to Mr. Oei, he determined that he would not consent to waive that disqualification.

Under 28 U.S.C. § 455(a) "[a] judge is required to recuse [him]self from 'any proceeding in which h[is] impartiality might reasonably be questioned.'" *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013).  "In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality." *Williams v. LaClair*, No. 9:10–CV–635, 2013 WL 1193766, at *3 (N.D.N.Y. Jan. 29, 2013) (citing *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

The reasoning used in *In re Cargill, Inc.*, 66 F.3d 1256 (1st Cir. 1995), which addressed a very similar factual situation, is instructive in considering the disqualification of Judge Furman in the present case.  In that case, the judge hearing the case had consulted with an attorney related to a real estate transaction.  The judge later learned that a different attorney who worked in the same law firm which he had consulted was appearing before him and advised the parties of that fact.  In discussing whether these facts, which are nearly identical to those in the present case, were a sufficient basis for disqualification, the First Circuit stated:

> The disqualification requirement of [28 U.S.C.] section 455(a) is triggered, despite the lack of any actual bias on the judge's part, if a reasonable person, knowing all the circumstances, would question the judge's impartiality. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861–62, 108 S.Ct. 2194, 2203–04, 100 L.Ed.2d 855 (1988). Most observers would agree that a judge should not hear a case argued by an attorney who, at the same time, is representing the judge in a personal matter. See 13A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3549, at 614 (1984) (citing cases). Although the appearance of partiality is attenuated when the lawyer appearing before the judge is a member of the same law firm as the judge's personal counsel, but not the same individual, many of the same cautionary factors are still in play. See, e.g., 2 Administrative Office of the U.S. Courts, Guide to Judiciary Policies and Procedures V–32 (1995) (expressing the view that "where an attorney-client relationship exists between the judge and the lawyer whose law firm appears in the case, the judge should recuse absent remittal").

*Id.* at 1260 n.4

In the present case, Judge Furman has correctly acknowledged, by asking for a waiver, that "an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).  Mr. Oei agrees that there is a sufficient question regarding impartiality that

disqualification is appropriate. The question is not whether Judge Furman could actually be impartial in his rulings in this case. Instead, the inquiry under 28 U.S.C. § 455(a) is whether a reasonable person would question Judge Furman's impartiality, with the ultimate goal being the "protection of the public's confidence in the impartiality of the judiciary." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir.2007). See, *ISC Holding AG v. Nobel Biocare Finance AG*, 688 F.3d 98, 107 (2d Cir.2012) (28 U.S.C. § 455(a) "is to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance.") In assessing whether disqualification is necessary, "the question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality" (Citations omitted). *SEC v. Razmilovic*, 738 F.3d 14, 30 (2d Cir. 2013).

Judge Furman has participated in telephone conferences, read motions and briefs and entered orders in this case all while Steptoe & Johnson, represented him with regard to his father's estate as well as the Defendant, GS Group. These facts, respectfully, would lead an "objective and disinterested observer" to reasonably question Judge Furman's ability to rule impartially in this case.

This conclusion is further supported by the fact that in his Declaration under Local Rule 1.4, related to substituting in as counsel for GS Group, Mr. Gresser, new counsel for GS Group, provided no explanation as to why he was being substituted as counsel for Charles Michael, GS Group's prior counsel, so abruptly. Mr. Michael is an eminently qualified attorney and his firm, Steptoe & Johnson, LLP, has an excellent reputation. If Mr. Gresser, or his firm, possesses some specialized expertise that Mr. Michael or Steptoe & Johnson does not possess, then he could have simply joined as additional counsel for GS Group, with Mr. Michael and his firm remaining as co-counsel. Instead, GS Group chose to completely switch counsel in the middle of the briefing schedule on the Motions presently pending before Judge Furman. The only plausible explanation for this sudden switch of counsel is that it is a clear attempt to "judge shop" and try to retroactively eliminate the conflict which forms the basis for Judge Furman's disqualification and to keep him as the judge on this case. This obvious attempt at gamesmanship further highlights the fact that a reasonable person could question Judge Furman's impartiality to hear this matter.

Accordingly, Mr. Oei hereby advises that he **DOES NOT** waive this disqualification or conflict of Judge Jesse L. Furman and he requests that this case be reassigned to a new judge.

Thank you for your kind attention and consideration.

Very truly yours,
McNULTY LAW FIRM

Peter J. McNulty
Attorney of Record, on behalf of:
Oei Hong Leong