```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
OEI HONG LEONG,                                     :
                                                    :
                        Plaintiff,                  :        13-CV-8655 (JMF)
                                                    :
        -v-                                         :        MEMORANDUM OPINION
                                                    :            AND ORDER
THE GOLDMAN SACHS GROUP INC.,                       :
                                                    :
                        Defendant.                  :
                                                    :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/02/2016

JESSE M. FURMAN, United States District Judge:

In 2013, Plaintiff Oei Hong Leong, a Singaporean billionaire, filed this suit against the Goldman Sachs Group, Inc. (the "Goldman Sachs Group"), the New York-based global investment bank conglomerate, alleging fraud and related torts in connection with investments Leong had made in the foreign-exchange market. On June 25, 2014, the Court issued an Opinion and Order staying and administratively closing the case pending arbitration to take place in England pursuant to the rules of the London Court of International Arbitration, in accordance with the parties' agreements. (Docket No. 33). Nearly two years later, Defendant returns to this Court, seeking injunctive relief against a Commodity Futures Trading Commission ("CFTC") reparations proceeding that Plaintiff initiated in lieu of proceeding with the arbitration. Because the parties' contract clearly provides for arbitration in England as the exclusive venue for any claims arising out of that agreement, Defendant's request for injunctive relief is GRANTED.

## BACKGROUND

The underlying facts of this dispute are laid out in this Court's prior opinion, familiarity with which is presumed. *See Oei Hong Long v. Goldman Sachs Grp.*, 13-CV-8655 (JMF), 2014

WL 2893310, at *1-3 (S.D.N.Y. June 25, 2014).  In short, Plaintiff seeks damages from the Goldman Sachs Group and its subsidiaries for losses stemming from a series of failed trades, alleging misconduct on the part of the Goldman Sachs entities.  *See id.*  Despite the fact that the Client Agreement between the parties calls for arbitration in England pursuant to the rules of the London Court of International Arbitration, Plaintiff has sought recourse in other fora — first, in a lawsuit filed in Singapore, and then in a lawsuit filed in New York Supreme Court that was removed to this Court.  *Id.*  Both the Singaporean court and this Court ruled that the parties were bound by the arbitration agreement.  *Id.* at *3, 6.  As noted, this Court stayed the New York litigation pending arbitration in London and administratively closed the case.  *Id.* at *6.

For reasons that are not clear on the present record, Plaintiff has yet to pursue his claims in the forum required by the parties' agreement.  (*See* Decl. Peter J. McNulty Supp. Pl. Oei Hong Leong's Opp'n (Docket No. 42) ("McNulty Decl.") ¶ 5; Decl. Charles Michael (Docket No. 36) ("Michael Decl.") ¶ 6).  Instead, on May 12, 2015, Plaintiff initiated a claim with the CFTC under its reparations program.  (*See* McNulty Decl. ¶ 6; Michael Decl. ¶¶ 7-9).  The CFTC Complaint brings substantially similar claims arising out of the same conduct as the Complaint filed in this Court and seeks the exact same amount ($34,299,037) in damages, but adds Goldman, Sachs & Co. and Goldman Sachs International as defendants.  (*See* Michael Decl. ¶ 7; *id.*, Ex. G).  When the Goldman Sachs entities were notified of the CFTC proceeding, the Goldman Sachs Group filed a motion for a temporary restraining order in this case.  (*See* Docket No. 34; *see also* Mem. Law Supp. Def.'s App. TRO & Permanent Inj. Relief (Docket No. 35) ("Def.'s Mem.") 4-8).  Thereafter, at the direction of the Court, the Goldman Sachs Group obtained a stay of the Goldman Sachs entities' time to answer the CFTC Complaint pending resolution of this motion.  (*See* Docket No. 40).  In light of that extension, and the resulting lack

of urgency, the Goldman Sachs Group has now reframed its request as one for a permanent injunction.  (*See* Reply Mem. Law Further Supp. Def.'s Mot. Enforce Pl.'s Arbitration Obligations (Docket No. 47) ("Def.'s Reply") 2).

## DISCUSSION

Defendant seeks to enjoin Plaintiff from prosecuting the CFTC proceeding pursuant to Section 206 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 206.[1]  That Section provides that courts "may direct that arbitration be held in accordance with [an] agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C. § 206; *see Renaissance Capital Grp., Ltd. v. Hedge Fund Adm'rs, Ltd.*, No. 00-CV-3260 (NRB), 2000 WL 1716353, at *2 (S.D.N.Y. Nov. 15, 2000).  In *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113 (2d Cir. 2011), the Second Circuit held that district courts have "the authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement."  *Id.* at 141.  The *American Express* Court was interpreting a different provision of the FAA — Section 3 — that gives courts the authority to stay litigation pending arbitration provided for in a contract; by contrast, Section 206 gives courts the authority to direct parties to arbitration.  But the Second Circuit's reasoning applies with equal force here, where the competing proceeding is another arbitration rather than litigation.  *See, e.g.*, *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) ("In fact, were the law read to prevent a court from enjoining an arbitration proceeding it might

---

[1]     Defendant also invokes the All Writs Act, 28 U.S.C. § 1651.  (*See* Def.'s Mem. 1, 6; Def.'s Reply 6-8).  The Court need not and does not address the question of whether the All Writs Act authorizes the relief Defendant seeks.  *See, e.g.*, *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 n.20 (2d Cir. 2011) (declining to decide whether the All Writs Act gives district courts the authority to enjoin an arbitration).

actually interfere with arbitration in the unusual case, arguably present here, where one such arbitration proceeding may interfere with another."); *Renaissance Capital*, 2000 WL 1716353, at *3 (enjoining an NASD arbitration and directing that arbitration proceed in London pursuant to the parties' agreement); *L.F. Rothschild & Co. v. Katz*, 702 F. Supp. 464, 467-68 (S.D.N.Y. 1988) ("This court has the power to enjoin [the defendants] from proceeding with the [other] arbitration, and by doing so it effectively can stay that arbitration.").

Thus, the question here is whether enjoining the CFTC reparations proceeding is necessary to give effect to the parties' agreement to arbitrate discussed in the Court's prior Opinion and Order. It plainly is. Notably, Plaintiff does not even attempt to argue that his claims in the reparations proceeding are different than the claims that he pursued earlier in this case or that those claims fall outside the scope of the parties' arbitration clause, which — as the Court has already held — requires arbitration in London. *See Oei Hong Leong*, 2014 WL 2893310, at *5-6. Instead, he argues that the CFTC is a legitimate alternative forum; that mandatory arbitration is precluded by 17 C.F.R. § 166.5, which provides that certain agreements must preserve the reparations procedure as an alternative to arbitration; and that enforcing the arbitration clause would interfere with the CFTC's "exclusive" jurisdiction over claims under the Commodity Exchange Act ("CEA"). (*See* Pl. Oei Hong Leong's Opp'n Def. Goldman Sachs Group Inc.'s Appl. TRO & Permanent Injunction (Docket No. 41) ("Pl.'s Mem.") 18-19). These arguments are easily rejected, however. First, whether the CFTC would otherwise be a legitimate alternative forum (and, by extension, whether the CFTC has concluded it has jurisdiction) has no bearing on whether the proceeding is barred by the parties' agreement to arbitrate. Second, the regulation upon which Plaintiff relies does not apply to an "eligible contract participant," defined to include "an individual who has amounts invested on a

4

discretionary basis, the aggregate of which is in excess of $10,000,000." 7 U.S.C. § 1a(18)(A)(xi)(I); *see* 17 C.F.R. § 166.5(g) ("A person who is an 'eligible contract participant'. . . may negotiate any term of an agreement or understanding . . . in which the eligible contract participant agrees, prior to the time a claim or grievance arises, to submit such claim or grievance to any settlement procedure provided for in the agreement."); *see also id.* § 166.5(a)(2) ("[A] person who is an 'eligible contract participant' as defined in section 1a(18) of the Act shall not be deemed to be a customer within the meaning of this section."). Plaintiff indisputably falls into that category. (*See, e.g.*, Notice of Removal (Docket No. 1), Ex. A, ¶¶ 21, 65, 113). And finally, the CEA itself makes clear that the CFTC's jurisdiction is not exclusive. *See* 7 U.S.C. § 25(a)(2) ("Nothing in this subsection shall limit or abridge the rights of the parties to agree in advance of a dispute upon any forum for resolving claims under this section, including arbitration."). Plaintiff cites *EEOC v. Waffle House*, 534 U.S. 279 (2002), and other cases for the proposition that a court may not enjoin an administrative proceeding in aid of arbitration, but those cases involved enforcement proceedings brought by the agencies themselves. They have no application where, as here, the agency is merely the forum for resolution of a private dispute between parties that have agreed to arbitration. *See, e.g.*, *Rosenthal & Co. v. CFTC*, 614 F.2d 1121, 1123 (7th Cir. 1980) (noting that in reparations cases, the CFTC merely "provide[s] a forum for the resolution of claims arising out of trading in commodities futures" and "does not assume a prosecutorial role in formal adjudicatory proceedings or represent complainants in asserting their claims for damages").

In short, Defendant plainly has the better of the argument on the merits. The parties disagree about whether Defendant must also satisfy the traditional test for injunctive relief. (*Compare* Def.'s Reply Mem. 10, *with* Pl.'s Mem. 3). *See, e.g.*, *Salinger v. Colting*, 607 F.3d 68,

76-79 (2d Cir. 2010) (discussing the test for injunctive relief). But even if it must, it has done so here. First, courts routinely hold that to be subjected to arbitration without one's consent qualifies as an irreparable injury that usually cannot later be compensated by monetary damages. *See, e.g.*, *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984-85 (2d Cir. 1997) (holding that a party "would be irreparably harmed by being forced to expend time and resources in arbitrating an issue that is not arbitrable"); *Tellium, Inc. v. Corning Inc.*, No. 03-CV-8487 (NRB), 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) ("Compelling arbitration of a matter not properly subject to arbitration constitutes per se irreparable harm." (internal quotation marks omitted)). Plaintiff attempts to distinguish that authority by arguing that the Goldman Sachs entities are properly subject to the CFTC's jurisdiction (*see* Pl.'s Mem. 4-6), but that argument is beside the point because the arbitration clause in the Client Agreement precludes recourse to the reparations proceeding and makes arbitration in London the exclusive forum (a result that, as noted, is authorized by the CEA itself). Finally, the balance of hardships and the public interest also plainly favor Defendant. Any harm suffered by Plaintiff is self-inflicted by his own — flagrant and continued — violation of the parties' agreement to arbitrate. Defendant, on the other hand, would face significant hardship if its contractual expectations were ignored and it was forced to submit to the jurisdiction of a forum other than the one to which it had agreed. Furthermore, in light of the "liberal federal policy favoring arbitration agreements," the public interest is served by enforcing parties' agreements to arbitrate according to their terms. *Waffle House*, 534 U.S. at 289 (internal quotation marks omitted); *see Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013); *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009). Accordingly, Defendant is entitled to equitable relief.

6

One issue remains.  The sole Defendant in this case is the Goldman Sachs Group, but the present motion seeks to enjoin Plaintiff from prosecuting the CFTC proceeding with respect to not only the Goldman Sachs Group, but also non-parties Goldman Sachs International and Goldman, Sachs & Co.  The Court concludes that that is appropriate.  First and foremost, there is no dispute that the arbitration clause of the Client Agreement encompasses Plaintiff's claims against Goldman Sachs International and Goldman, Sachs & Co., as they qualified as "Affiliates" of Goldman Sachs (Asia), L.L.C. under the Client Agreement.  (*See* Michael Decl., ¶ 10 & Ex. I).  *See Oei*, 2014 WL 2893310, at *1; *see also* The Goldman Sachs Group, Inc. 2015 Annual Report (10-k), Ex. 21.1 (Feb. 19, 2016), *available at* www.goldmansachs.com/investor-relations/financials/current/10k/2015-10-k.pdf (listing the significant subsidiaries of the Goldman Sachs Group).  Defendant's motion seeks an order compelling Plaintiff, who is indisputably subject to the Court's jurisdiction, to proceed in accordance with his agreement; allowing him to proceed against Goldman Sachs International and Goldman, Sachs & Co. in the CFTC proceeding would not be in accordance with the agreement.  Finally, given the potential collateral estoppel effects of the CFTC proceeding, among other things, allowing Plaintiff to proceed with his claims in that proceeding against Goldman Sachs International and Goldman, Sachs & Co., but not the Goldman Sachs Group, could undermine the relief granted here.  That is, in order to grant effective relief to the Goldman Sachs Group, Plaintiff must be enjoined from prosecuting his CFTC claims against all three Goldman Sachs entities.[2]

---

[2] In the alternative, Defendant seeks leave for the other two Goldman Sachs entities to appear as counterclaim plaintiffs under Rules 13(h) and 19 of the Federal Rules of Civil Procedure and to bring their own "follow-on motion."  (*See* Def.'s Reply 6 n.1).  If necessary, the Court would be inclined to take that step, but it sees no reason to require it.

## CONCLUSION

For the foregoing reasons, Plaintiff is hereby enjoined from proceeding with the CFTC reparations proceeding and directed to submit any dispute arising out of the parties' agreement to the London Court of International Arbitration, in accordance with this Court's prior Opinion and Order. The Clerk of Court is directed to terminate Docket No. 34.[3]

SO ORDERED.

Date: May 2, 2016
New York, New York

JESSE M. FURMAN
United States District Judge

---

[3] This case technically remains administratively closed. In accordance with the Court's prior Opinion and Order, either party may move by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.